IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MARCHÉ DESIGN, LLC,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **STANDARD MERIT, LLC,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 08-CV-2108-CM/JPO |
| ) | |
| **TWINPRO INTERNATIONAL** ) | |
| **HOLDINGS LIMITED, et al.** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

This matter comes before the court on Plaintiffs' Motion for Default Judgment (Doc. 31). Plaintiffs seek a permanent injunction and an award of attorneys fees and costs. For the reasons set forth below, the court grants plaintiffs' motion for default judgment.

**I.     FACTUAL BACKGROUND**

Plaintiffs design speakers for their customers to sell online and in retail catalogs. Defendants contracted with plaintiffs to manufacture certain speakers plaintiffs had designed. Defendants are in China. Plaintiffs filed this case alleging claims for: (1) Trade Dress Infringement; (2) Breach of Implied Warranty; (3) Breach of Contract and Conversion; and (4) Breach of Contract; and (5) Patent Infringement.

In regard to the trade dress infringement claim, plaintiffs allege that defendant TwinPro International Holdings Limited ("TwinPro") is advertising the speakers that plaintiffs designed on the internet in violation of the Lanham Act, 15 U.S.C. § 1125(a). On April 21, 2008, plaintiffs filed

a motion for temporary restraining order. After concluding plaintiffs made a sufficient showing that they were entitled to the relief requested, the court granted the temporary restraining order on May 21, 2008, enjoining defendant, and any person in active concert or participation with it, from "advertising, marketing or offering in the United States, or importing into the United States, the products at issue, *i.e.*, the wireless speakers designed by plaintiffs for sale to Hammacher and Frontgate." This court has since granted two motions to extend the temporary restraining order, and a motion to amend the temporary restraining order to specifically reference the statutory justification for the relief. On June 27, 2008, plaintiffs obtained personal service of their complaint and summons on defendant TwinPro.[1] On August 28, 2008, this court granted plaintiffs' motion to convert the temporary restraining order into a preliminary injunction to be in place until the time of entry of judgment in the action.

Despite service, defendant TwinPro has made no appearance, nor has it filed any answer. The clerk entered default against defendant TwinPro on November 12, 2008. Plaintiff now seeks default judgment against defendant TwinPro for equitable relief in the form of a permanent

---

[1] Defendant TwinPro received personal service, appropriate under Fed. R. Civ. P. 4; and Hague Convention on the Service of Judicial and Extrajudicial Documents, 20 U.S.T. § 361; see also *Salomon Brothers Inc. v. Huitong Intern. Trust & Inv.*, No. 1997 WL 324051, at *1 (S.D.N.Y., June 13, 1997); LOID § 2:7. Defendants David Shi and Terry Chan, TwinPro's principals, have received copies of the amended complaint and other papers via Federal Express, and have acknowledged receipt of the same, although they have not formally been served in this action. *See Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444 (9th Cir. 1991); *Denlinger v. Chinadotcom Corp.*, 110 Cal.App.4th 1396, 2 Cal.Rptr.3d 530 Cal.App. 6 Dist., (2003) (service of Hong Kong defendants by mail proper under Hague Convention); *Hospitality Systems, Inc. v. Oriental World Trading Co. LTD*, 2000 WL 177441, at * 5 (Conn. Super. 2000) (noting the inconsistency in the law, and citing, *inter alia*, *Downes v. Ryobi America Corporation*, 1993 WL 78611, (8 Conn. L. Rptr. 502, March 12, 1993)).

injunction to prevent future trade dress infringement by defendant.  Plaintiffs also seek the amount of their costs and attorney fees.

## II.     JUDGMENT STANDARD

Once default is entered, a defendant is deemed to have admitted plaintiffs' well-pleaded allegations of fact.  *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).  Under Rule 55(b), "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing. . . "  The claimed amount of damages must be supported with an affidavit or other evidence of actual damages.

## III.    DISCUSSION

### A.     Injunctive Relief

This court will issue injunctions as a part of default judgments.  *See Commodities Futures Trading Comm'n v. Wall Street Underground, Inc.*, 451 F. Supp. 2d 1256 (D. Kan. 2006) (granting entry of permanent injunctions against entity and individual on plaintiff's motion for default judgment).  Nevertheless, plaintiffs, as the parties seeking the permanent injunction, bear the burden to establish: (1) actual success on merits; (2) irreparable harm unless injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause to the opposing party; and (4) the permanent injunction, if issued, will not adversely affect the public interest.  *Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003) (citations omitted).

The court first looks at whether plaintiffs have succeeded on the merits of their claims. Plaintiffs base the present request on one claim: trade dress infringement in violation of the Lanham

Act.[2] The Tenth Circuit has established three elements necessary for plaintiffs to succeed on their trade dress infringement claim: (1) the trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) there is a likelihood of confusion among consumers as to the source of the competing products; and (3) the trade dress is nonfunctional. *See* 15 U.S.C. § 1125(a)(3); *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226–27 (10th Cir. 2007).

Here, plaintiffs have submitted photographs of the speakers at issue and identified the design elements unique to the speakers. Regarding the "Hammacher speakers," plaintiffs identify the unique shape, the side indentations, and the contrasting grill and rear handle. Regarding the "Frontgate speakers," plaintiffs identify the unique shape, curved grill, and top depression. The court accepts that these design elements are inherently distinctive or have become distinctive through secondary meaning.

In analyzing the second element, the court considers several factors: (1) the degree of similarity between the products; (2) the intent of the alleged infringer in designing its product; (3) evidence of actual confusion; (4) similarity in how the products are marketed; (5) the degree of care likely to be exercised by purchasers; and (6) the strength of the trade dress. Additionally, the court notes that proof of intentional copying raises an inference of likelihood of confusion. *See Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 973 (10th Cir. 2002). Here, plaintiffs have

---

[2] Under the Lanham Act:
Any person, who on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact or false or misleading representation of fact, which—is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a)(1).

indicated that the products are identical, that defendant has deliberately designed the product to resemble plaintiffs' product by using the same production equipment, and that defendant is using marketing methods identical to plaintiffs'. The court also notes that plaintiffs have alleged that defendant's copying is intentional. The court accepts that there is a likelihood of confusion among consumers.

In analyzing the third element, plaintiffs ask the court to take judicial notice that there are many other ways to design and configure an audio speaker. The court notes that the average consumer interacts with several models of speakers on a daily basis, whether in the home, car, connected to the computer, or even in the courtroom. Plaintiffs have indicated that none of the identified unique features function to improve speaker quality or performance. Thus, protection of these features likely would not hinder competition or impinge upon the rights of others to compete effectively, which is the key test for determining functionality.

Under the standards applicable to default judgment, the court finds that plaintiffs have succeeded on the merits of their trademark infringement claim. *See Olcott*, 327 F.3d at 1125 (once default is entered, a defendant is deemed to have admitted the plaintiff's well-pleaded allegations of fact).

The court now turns to whether plaintiffs will suffer irreparable harm if the court declines to issue a permanent injunction. A harm is irreparable if money damages are an inadequate remedy because of difficulty or uncertainty in their proof or calculation. *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990). Irreparable harm can occur through loss of customers or goodwill, as well as threats to a business's viability. *Zurn Constructors Inc. v. B.F. Goodrich Co.*, 685 F. Supp. 1172, 1181 (D. Kan. 1988).

Here, plaintiffs argue that infringement alone is sufficient to establish irreparable injury. Additionally, plaintiffs argue that their business is based on the ability to design and engineer unique products for their customers. If defendant creates identical products, plaintiffs would be unable to maintain relationships with their customers. Plaintiffs point to one of their customers suspending an order of the speakers at issue because of defendants' activities and the customer's diminishing belief in plaintiffs' promise of unique products. Plaintiffs have alleged that, if defendant is allowed to advertise, offer, or import the speakers, plaintiffs will be unable to deliver on their promise of exclusivity to their clients. Moreover, plaintiffs have established that defendant has continued to market the infringing speakers on the internet in violation of this court's temporary restraining order and preliminary injunction. Plaintiffs have sufficiently shown that they will suffer irreparable harm unless the permanent injunction is issued.

Next, the court looks at whether the threatened injury outweighs the harm that the permanent injunction may cause defendant. If the court were to enter the requested judgment, defendant would be prohibited from selling the speakers in the United States. Indeed, under this court's orders, defendant prohibited from this act already. Moreover, plaintiffs have also shown significant threatened harm to themselves, as well as to their clients, whose businesses may be damaged, and to the public, who may be misled by the source of the speakers at issue here. Thus, the court finds that plaintiffs have made a strong showing that the threatened harm outweighs the potential harm to defendant.

Finally, the court considers whether the injunction, if issued, would adversely affect the public interest. Here, there is no indication that issuing the requested injunction would adversely affect the public interest.

As a result of considering these factors, the court finds that plaintiffs are entitled to the requested injunction, and the court therefore enjoins defendant, and any person in active concert or participation with it, from advertising, marketing or offering in the United States, or importing into the United States, the products at issue, *i.e.*, the wireless speakers designed by plaintiffs for sale to Hammacher and Frontgate, or products substantially or confusingly similar to those.[3]

### B.     Attorney Fees and Costs

Plaintiffs also seek a judgment in the amount of their costs and attorney fees under the Lanham Act due to defendant's malicious, willful and deliberate infringement.  Because plaintiffs have established that defendant violated section 1125(a), plaintiffs are entitled to recover, *inter alia*, costs of the action in the undisputed amount of $3,915.15.  The Act also authorizes this court to award attorney fees if the defendant's actions make the case an "exceptional case of infringement." 15 U.S.C. § 1117(a).  "An 'exceptional case' is one in which the . . . infringement can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" *VIP Foods, Inc. v. Vulcan Pet, Inc.*, 675 F.2d 1106, 1107 (10th Cir. 1982) (citing S. Rep. No.93-1400, 93rd Cong., 2d Sess., reprinted in (1974) U.S. Code Cong. & Ad. News 7132, 7133); *see also Universal Motor Oils Co., Inc. v. Amoco Oil Co.*, 809 F. Supp. 816, 823 (D. Kan. 1992).

Under the admitted facts, the court finds that this is an exceptional case.  Although plaintiffs have not established – and do not seek – actual damages or loss of profits due to defendant's production and sale of infringing speakers, plaintiffs have established that defendant willfully counterfeited these speakers with the intent to deceive or confuse the public or to willfully infringe upon plaintiffs' trade dress.  Although a lack of damages is a factor for determining whether the case is exceptional, the court does not consider this fact to preclude such a determination.  *See Post Office*

---

[3] These products are portrayed in Exhibits A and B, attached to this Order.

*v. Portec, Inc.*, 913 F.2d 802, 812 (10th Cir. 1990), *judgment vacated on other grounds by* 499 U.S. 915 (1991).  Furthermore, defendant has failed to comply, and continues to willfully violate, the orders of this court: admitted facts establish that defendants in this case are "aware of the existence of this action, but . . . are 'too busy' to defend it."  (Doc. 31, at 1).  The court finds that an award of attorney fees under section 1117(a) of the Lanham Act is proper.

Plaintiffs seek attorney fees in the amount of $49,897.50.  This amount represents actual fees, calculated at the standard rates actually billed to plaintiffs, based on the number of hours actually worked, with downward adjustments, by plaintiffs' counsel, and is supported by the record.  Under the approach this court employs for awarding fees, the court finds that $49,897.50 is a reasonable figure.  *Johnson v. Westhoff Sand Co., Inc.*, 135 P.3d 1127, 1135 (Kan. 2006) (federal lodestar approach is an appropriate basis for awarding fees); *Erickson v. City of Topeka*, 239 F. Supp. 2d 1202, 1212 (D. Kan. 2002) (same); *Terra Venture, Inc. v. JDN Real Estate – Overland Park, L.P.*, 242 F.R.D. 600, 603–04 (D. Kan. 2007) (under Kansas law, the court considers similar factors to determine a reasonable figure).

**IT IS THEREFORE ORDERED** that plaintiffs' Motion for Default Judgment (Doc. 31) is granted.

**IT IS FURTHER ORDERED THAT** defendant TwinPro, and any persons in active concert or participation with it who receive actual notice of this order, are hereby enjoined from advertising, marketing or offering in the United States, or importing into the United States, the products at issue, *i.e.*, the wireless speakers designed by plaintiffs for sale to Hammacher and Frontgate portrayed in Exhibits A and B attached to this order, or any other products substantially or confusingly similar to those depicted in Exhibits A and B.

-9-

**IT IS FURTHER ORDERED THAT** the amount of $53,812.65, which represents costs of $3,915.15, and attorney fees of $49,897.50, are awarded to plaintiffs against defendant TwinPro.

Dated this 6th day of January 2009, at Kansas City, Kansas.

                                      **s/ Carlos Murguia**
                                      **CARLOS MURGUIA**
                                      **United States District Judge**